PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

CLARENCE I. TAYLOR, JR.,
Plaintiff-Appellee,

v.                                                          No. 95-1980

DAVID K. WATERS, Individually,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
James E. Bradberry, Magistrate Judge.
(CA-94-63-4)

Argued: March 5, 1996

Decided: April 10, 1996

Before HALL, WILKINS, and WILLIAMS, Circuit Judges.

_____

Reversed and remanded with instructions by published opinion. Judge
Wilkins wrote the opinion, in which Judge Hall and Judge Williams
joined.

_____

COUNSEL

ARGUED: John Adrian Gibney, JR., SHUFORD, RUBIN & GIB-
NEY, P.C., Richmond, Virginia, for Appellant. Sa'ad El-Amin,
EL-AMIN & CRAWFORD, P.C., Richmond, Virginia, for Appellee.

**OPINION**

WILKINS, Circuit Judge:

Clarence I. Taylor, Jr. brought this action pursuant to 42 U.S.C.A. § 1983 (West 1994), alleging that Investigator David K. Waters deprived him of rights guaranteed under the Fourth, Fifth, and Fourteenth Amendments by arresting him without probable cause and by failing to disclose exculpatory evidence to the prosecutor in a more timely manner.[1] Investigator Waters appeals the refusal of the magistrate judge[2] to grant his motion for summary judgment. Because we conclude that the officer is entitled to qualified immunity on Taylor's § 1983 claims, we vacate the decision of the magistrate judge and remand with directions to enter judgment in favor of Investigator Waters. Further, since all of the federal claims have been rejected, we direct the magistrate judge to dismiss without prejudice the remaining state-law claims.

I.

Viewed in the light most favorable to Taylor, the record demonstrates the following. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In 1989 or 1990, Investigator Waters learned that a Jamaican individual named "Harold," later identified as Harold Duncan, was converting cocaine into cocaine base at a specified address in Williamsburg, Virginia and, using this location as a base of operation, was distributing the illegal drugs from his automobile. In April 1992, an informant provided Investigator Waters with details concerning Duncan's distribution from his automobile of drugs processed at his residence. An investigation of the automobile tag number provided by the informant disclosed that Duncan resided at the same location that had earlier been identified to the officer. Relying on this information, police officers stopped Duncan's automobile, arrested him, and seized a quantity of cocaine. Soon afterward, Duncan admitted that he was a cocaine dealer.

_____

[1] In addition to his constitutional claims, Taylor raised several state-law causes of action.
[2] The parties consented to submission of the case to a magistrate judge for final resolution. See 28 U.S.C.A. § 636(c) (West 1993).

Officers subsequently obtained a search warrant for Duncan's apartment because information indicated that additional quantities of drugs remained there. Upon arrival to execute the warrant, Investigator Waters encountered Taylor and learned for the first time that he was Duncan's roommate. In the kitchen, officers observed a pot on the counter with white residue on it and discovered a strainer that also appeared to have white residue on it. When questioned about the pot, Taylor explained that he had used it to make tea. The officers also found plastic bags with the corners removed--typical packaging material employed by cocaine distributors--and a brown envelope with a white powdery substance in it located in a trash can in a common area of the apartment. Additionally, a box of plastic bags was found in the refrigerator. In Taylor's room, police discovered more than $5,500 in currency, four uncashed paychecks totalling approximately $1,907 from Taylor's employment as a waiter, bank statements indicating balances in two accounts totalling in excess of $23,000, and $15 in Jamaican currency. Taylor informed police that he had lived with Duncan for 12 years, but stated that he did not know Duncan's occupation. In response to questions concerning whether he possessed any weapons, Taylor informed the officers that there was a hunting rifle in his closet; officers immediately seized this weapon. Armed with this information, Investigator Waters arrested Taylor on charges of conspiracy to distribute cocaine, see Va. Code Ann. § 18.2-256 (Michie 1988), possession of cocaine, see Va. Code Ann. § 18.2-250(A) (Michie Supp. 1995), and possession of a firearm while illegally possessing cocaine, see Va. Code Ann. § 18.2-308.4(A) (Michie Supp. 1995). Investigator Waters obtained arrest warrants and served them on Taylor later that evening, April 29, 1992.

Further investigation, however, failed to provide additional evidence of Taylor's guilt. Soon after the arrest, Duncan informed Investigator Waters that Taylor was not involved in the offenses, and the informant who had identified Duncan reported that she had no knowledge of Taylor. On May 27, 1992, police officers executed a search warrant for the apartment and Taylor's automobile; although officers seized over 70 items in the search, no inculpatory evidence was obtained. And, a report completed June 12, 1992 disclosed that laboratory analysis of the residue on the kitchen utensils failed to reveal the existence of narcotics. Only the brown envelope located in the

3

kitchen trash contained cocaine residue. Prior to the preliminary hearing, Investigator Waters reviewed this evidence with the prosecutor assigned to the case. The charges against Taylor subsequently were declared nolle prosequi on July 3, 1992--approximately two months after his arrest--immediately before the preliminary hearing.

Thereafter, Taylor brought the present § 1983 action against Investigator Waters, claiming that he had violated Taylor's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments. He also alleged state-law causes of action for malicious prosecution and negligence. Investigator Waters moved for summary judgment, asserting that viewed in the light most favorable to Taylor, probable cause had existed for the arrest and prosecution. Further, the officer maintained that even if probable cause did not exist, he was protected by qualified immunity because the information supporting the arrest was not so lacking that a reasonable officer could not have believed that probable cause existed for Taylor's arrest.

The magistrate judge denied the motion. The lower court reasoned that the circumstances known to Investigator Waters did not provide probable cause to believe that Taylor had committed any offense and that consequently Investigator Waters knew or should have known that he was violating Taylor's rights. The magistrate judge also ruled that Investigator Waters possessed an affirmative duty to notify prosecutors immediately of information that was exculpatory of Taylor and that the officer had failed to satisfy this obligation, instead simply allowing the prosecution to remain pending until the scheduled preliminary hearing when the charges were declared nolle prosequi. Finally, the magistrate judge denied summary judgment to the officer on Taylor's state-law claims. From this ruling, Investigator Waters appeals.[3]

_____

[3] Since this interlocutory appeal calls upon the court to decide whether the law was clearly established based on the facts viewed in the light most favorable to Taylor, rather than to decide whether the district court properly concluded that a genuine issue of material fact warranting trial existed, we possess jurisdiction over the appeal from the refusal of the district court to rule that Investigator Waters was protected by qualified immunity. See Johnson v. Jones, 115 S. Ct. 2151 (1995).

4

II.

A government official is entitled to qualified immunity from civil damages for performing discretionary functions when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This court has explained:

> In analyzing the appeal of a denial of summary judgment on qualified immunity grounds, it is necessary first to identify the specific constitutional right allegedly violate[d], then to inquire whether at the time of the alleged violation it was clearly established, then further to inquire whether a reasonable person in the official's position would have known that his conduct would violate that right.

Gordon v. Kidd, 971 F.2d 1087, 1093 (4th Cir. 1992) (internal quotation marks omitted).

Taylor's complaint is far from a model of clarity, rendering enigmatic an identification of "the specific constitutional right allegedly infringed by the challenged [conduct]." Graham v. Connor, 490 U.S. 386, 394 (1989). His complaint simply claims that the facts alleged implicate rights protected by the Fourth, Fifth, and Fourteenth Amendments. Accordingly, we address separately the two principal factual assertions alleged by Taylor.

A.

The parties agree that Taylor's claim that his arrest was not supported by probable cause alleges a deprivation of the Fourth Amendment right to be free from unreasonable seizures. Although the right to be free from seizures not founded upon probable cause was well established prior to Taylor's 1992 arrest, see, e.g., Gerstein v. Pugh, 420 U.S. 103, 111-12 (1975), defining the applicable right at that level of generality is not proper, see Anderson v. Creighton, 483 U.S. 635, 639-40 (1987). Rather,

> the right the official is alleged to have violated must have been "clearly established" in a more particularized, and

5

hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Id. at 640 (citation omitted); see Malley v. Briggs, 475 U.S. 335, 341 (1986) (Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."). Thus, we must consider whether the established contours of probable cause were sufficiently clear at the time of the arrest to make it plain to a reasonable officer that under these particular circumstances arresting Taylor would violate his constitutional rights.

In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest. United States v. Al-Talib, 55 F.3d 923, 931 (4th Cir. 1995). Probable cause exists when the facts and circumstances known to the officer "would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." United States v. Garcia, 848 F.2d 58, 59-60 (4th Cir.), cert. denied, 488 U.S. 957 (1988) (internal quotation marks omitted); see Wilkes v. Young, 28 F.3d 1362, 1365 (4th Cir. 1994) ("Probable cause only requires enough evidence `"to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.'") (quoting Brinegar v. United States, 338 U.S. 160, 175-76 (1949)), cert. denied, 115 S. Ct. 1103 (1995). Probable cause must be supported by more than a mere suspicion, but evidence sufficient to convict is not required. Wong Sun v. United States, 371 U.S. 471, 479 (1963).

That one is merely present "at the scene of a crime or in the company of a person engaging in criminal activity" is not, by itself, sufficient to establish probable cause. Garcia, 848 F.2d at 60 (citing United States v. Di Re, 332 U.S. 581, 594 (1948)). Nor is evidence of "a person's mere propinquity to others independently suspected of criminal activity," without more, adequate to establish probable cause. Ybarra v. Illinois, 444 U.S. 85, 91 (1979). [4] Seemingly innocent activ-

_____

[4] Pursuant to Va. Code Ann. § 18-2.250(A), no presumption of possession arises as a result of ownership or occupancy of premises where

ity, however, though not conclusive of probable cause, "may `provide the basis for a showing of probable cause'" when considered in the context of all of the surrounding circumstances. United States v. Thomas, 913 F.2d 1111, 1116 (4th Cir. 1990) (quoting Gates v. Illinois, 462 U.S. 213, 244 n.13 (1983)).

In Ker v. California, 374 U.S. 23 (1963), state law enforcement officers had obtained information sufficient to support probable cause to arrest George Ker for marijuana possession. When officers arrived at Ker's apartment, his wife was present. In discussing whether the officers possessed probable cause to arrest her also, the Supreme Court wrote:

> Probable cause for the arrest of petitioner Diane Ker, while not present at the time the officers entered the apartment to arrest her husband, was nevertheless present at the time of her arrest. Upon their entry and announcement of their identity, the officers were met not only by George Ker but also by Diane Ker, who was emerging from the kitchen. Officer Berman immediately walked to the doorway from which she emerged and, without entering, observed the brick-shaped package of marijuana in plain view. Even assuming that her presence in a small room with the contraband in a prominent position on the kitchen sink would not alone establish a reasonable ground for the officers' belief that she was in joint possession with her husband, that fact was accompanied by the officers' information that Ker had been using his apartment as a base of operations for his narcotics activities. Therefore, we cannot say that at the time of her arrest there were not sufficient grounds for a reasonable belief that Diane Ker, as well as her husband, was committing the offense of possession of marijuana in the presence of the officers.

Id. at 36-37. Thus, the Court concluded that the officers possessed probable cause for arrest based on their knowledge that the suspect

_____

drugs are found. However, ownership or occupancy may be considered with other evidence tending to prove dominion or control over the items. See Burchette v. Commonwealth, 425 S.E.2d 81, 83 (Va. Ct. App. 1992).

was in close proximity to illegal drugs plainly visible in a residence she shared with a known drug dealer who used the residence as his base of operations for distribution.

Viewed in the light most favorable to Taylor, the facts of which Investigator Waters was apprised when he placed Taylor under arrest were closely analogous to those held to sustain a finding of probable cause in Ker. Taylor had lived with Duncan--a confessed narcotics dealer--for many years. Duncan was believed to have used their apartment as a base of operations for his drug distribution activities for at least several years. During the search, a pot--a utensil commonly used to convert cocaine into cocaine base--with white residue on it was in plain view in the kitchen. Taylor had demonstrated both a knowledge of the existence of and a connection to the pot by informing Investigator Waters that he (Taylor) had used it to make tea. Plastic bags, routinely used for packaging and distributing illegal drugs, were located nearby in the common area of the apartment, as was an envelope containing a white powdery substance. Further, the large amount of currency in Taylor's bedroom and the information disclosed in his bank statements were consistent with his involvement in a cocaine distribution conspiracy.

Although the facts known to Investigator Waters appear more than adequate to support a finding of probable cause for Taylor's arrest, we need not decide that issue because, in any event, the law was not clearly established that an arrest of Taylor under these circumstances would violate his rights. Furthermore, an officer in Investigator Waters' position could reasonably have believed that the facts known to him were sufficient to establish probable cause for Taylor's arrest. See Malley, 475 U.S. at 344-45. Accordingly, we conclude that Investigator Waters is entitled to qualified immunity on Taylor's § 1983 claim alleging that his arrest and prosecution were unsupported by probable cause.

B.

We next turn to Taylor's claim that Investigator Waters' failure to disclose exculpatory information--that Duncan had indicated that Taylor was not involved in the offenses, that the informant possessed no knowledge of him, and that the search warrant executed in May

8

had failed to disclose inculpatory evidence--to the prosecutor violated his constitutional rights. Again, we conclude that no settled authority established the illegality of the officer's conduct.

Taylor first alleges that this failure to disclose deprived him of his right to due process of law as guaranteed by the Fourteenth Amendment. The Supreme Court, however, has made plain that "[t]he Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the `process that is due' for seizures of person or property in criminal cases, including the detention of suspects pending trial." Gerstein, 420 U.S. at 125 n.27; see Baker v. McCollan, 443 U.S. 137, 142-46 (1979) (holding that determination of probable cause by detached judicial officer that complies with Fourth Amendment constitutes all of the process due in order to constitutionally detain an accused pending trial). And, the Court recently held that no substantive due process right against prosecution on less than probable cause exists under the Fourteenth Amendment--at least when there is no quantum of harm occurring between the initiation of groundless charges and the seizure. Albright v. Oliver, 114 S. Ct. 807, 810-14 (1994) (plurality); id. at 819-22 (Souter, J., concurring in judgment); see also United States v. James Daniel Good Real Property, 114 S. Ct. 492, 499 (1993) (noting that the Court has considered arrest and pretrial detention of criminal suspects to be governed by the Fourth Amendment without reference to other constitutional guarantees); Graham, 490 U.S. at 395 (rejecting substantive due process analysis in context of a claim of excessive force during arrest). Therefore, Taylor's assertion that Investigator Waters failed to disclose exculpatory evidence does not allege a deprivation of any right guaranteed under the Due Process Clause of the Fourteenth Amendment.**5**

_____

**5** The decision of this court in Goodwin v. Metts, 885 F.2d 157 (4th Cir. 1989), cert. denied, 494 U.S. 1081 (1990), does not dictate a contrary result. In Goodwin, this court held that despite the existence of probable cause at the time of plaintiffs' arrest, a showing that the officer later obtained, but failed to disclose, exculpatory evidence and that the § 1983 plaintiffs were unnecessarily put to trial as a result of this failure was sufficient to establish that the officer violated plaintiffs' right to due process, reasoning that a wrongful prosecution constituted a deprivation of

9

Finally, we consider whether established Fourth Amendment jurisprudence clearly rendered Investigator Waters' failure to disclose exculpatory evidence to the prosecutor unconstitutional. We conclude that it did not. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. This amendment requires that arrests be made based upon probable cause and that a neutral and detached judicial officer evaluate probable cause as a condition of significant pretrial restraint of liberty. See Gerstein, 420 U.S. at 114. Once such a determination of probable cause has been rendered, however, the Fourth Amendment does not impose any further requirement of judicial oversight or reasonable investigation to render pretrial seizure reasonable. Baker, 443 U.S. at 143-46; Gerstein, 420 U.S. at 118-19. Instead, other constitutional guarantees contained in the Bill of Rights--such as the right to a speedy trial--protect the accused by ensuring that he will not be detained indefinitely before an "ultimate determination of . . . innocence is placed in the hands of the judge and the jury." Baker,

_____

liberty. Id. at 161-63. To the extent that Goodwin bases its holding on a conclusion that the officer's failure to disclose exculpatory evidence deprived the § 1983 plaintiffs of a liberty interest in avoiding prosecution on less than probable cause, that reasoning has been rejected in Albright. See Albright, 114 S. Ct. at 810 (plurality); id. at 819-22 (Souter, J., concurring in judgment). But, to the extent that Goodwin ruled that the officer's failure to disclose the exculpatory information deprived the § 1983 plaintiffs of their right to a fair trial, its holding is not affected by Albright. See Albright, 114 S. Ct. at 813 n.6 (plurality); Goodwin, 885 F.2d 163 (distinguishing Baker v. McCollan on the basis that the § 1983 plaintiffs were subjected to trial). See generally Brady v. Maryland, 373 U.S. 83, 87 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . ."). In this instance, it is undisputed that Taylor was not subjected to trial.

10

443 U.S. at 145-46; see Albright, 114 S. Ct. at 812-13 (plurality); Gerstein, 420 U.S. at 125 n.27. Consequently, although open communication between investigators and prosecutors should be encouraged, the failure of an officer to disclose exculpatory evidence after a determination of probable cause has been made by a neutral detached magistrate does not render the continuing pretrial seizure of a criminal suspect unreasonable under the Fourth Amendment. [6]

III.

Investigator Waters also requests that we reverse the decision of the magistrate judge to deny summary judgment in his favor on Taylor's state-law claims. The decision of the magistrate judge denying summary judgment on these claims is not a final order, nor did the lower court certify the issue for interlocutory appeal. See 28 U.S.C.A. §§ 1291-1292 (West 1993 & Supp. 1995); see also DiMeglio v. Haines, 45 F.3d 790, 807-08 (4th Cir. 1995). Our jurisdiction to consider appeals of the denial of qualified immunity on an interlocutory basis does not provide grounds for consideration of other rulings of the lower court--absent an independent jurisdictional basis--unless the other issue is (1) inextricably intertwined with the decision of the lower court to deny qualified immunity or (2) consideration of the additional issue is necessary to ensure meaningful review of the qualified immunity question. Swint v. Chambers County Comm'n, 115 S. Ct. 1203, 1212 (1995).

A determination of whether the evidence was sufficient to raise a genuine issue of material fact on each of the elements of the state-law causes of action is not inextricably intertwined with Investigator Waters' entitlement to qualified immunity on Taylor's § 1983 claims, nor is consideration of the former necessary to review the latter. Hence, we lack jurisdiction to review the propriety of the decision of the lower court denying summary judgment to Investigator Waters on the state-law issues.

_____

[6] Taylor's allegation that Investigator Waters violated rights guaranteed under the Fifth Amendment must fail because Taylor has not alleged any conduct on the officer's part that even arguably is governed by that amendment.

11

Nevertheless, because we have directed dismissal of all of Taylor's federal claims, we instruct the magistrate judge on remand to dismiss the state-law claims without prejudice. See 28 U.S.C.A. § 1367 practice commentary (West 1993) (explaining that the decision to decline to exercise supplemental jurisdiction over state-law causes of action after dismissal of all claims over which district court had original jurisdiction under § 1367(c)(3) will "hinge on the moment within the litigation when the dismissal of the touchstone claim takes place, and on the other surrounding circumstances"); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); Clark v. Brown, 861 F.2d 66, 68 (4th Cir. 1988) (directing dismissal of state-law claims on remand after holding district court erred in failing to grant summary judgment to defendant in § 1983 claim on the basis of qualified immunity).

REVERSED AND REMANDED WITH INSTRUCTIONS

12