**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BUFORD T. MYERS,
<u>Plaintiff-Appellee,</u>

v.

TOWN OF LANDIS; GENE R. BEAVER,

in his official capacity as Mayor of
the Town of Landis and in his
individual capacity,
<u>Defendants-Appellants.</u>

No. 96-1433

Appeal from the United States District Court
for the Middle District of North Carolina, at Salisbury.
Frank W. Bullock, Jr., Chief District Judge.
(CA-94-700-4)

Argued: December 5, 1996

Decided: February 20, 1997

Before HALL and NIEMEYER, Circuit Judges, and DAVIS,
United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed in part, dismissed in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Redfern Morgan, Jr., WOMBLE, CARLYLE,
SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina,

for Appellants. Robert Mauldin Elliott, ELLIOTT, PISHKO, GEL-
BIN & MORGAN, P.A., Winston-Salem, North Carolina, for Appel-
lee. **ON BRIEF:** David C. Pishko, ELLIOTT, PISHKO, GELBIN &
MORGAN, P.A., Winston-Salem, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

## OPINION

PER CURIAM:

In this civil rights action for damages and injunctive relief, the
town of Landis, North Carolina, and its ex-mayor, Gene R. Beaver,
jointly appeal the interlocutory order of the district court denying
Beaver qualified immunity as to the claim by former town employee
Buford T. Myers that Beaver, acting in his individual capacity, vio-
lated Myers's First Amendment right to speak freely. We hold that,
insofar as this appeal has been taken by the town, it must be dis-
missed. With respect to that portion of the appeal properly before us,
we affirm the district court's decision, and we remand the case for
further proceedings.

I.

Landis is a small town of approximately 2,300 persons. Beaver,
who had previously served as mayor from 1969-79, was again elected
to the position in 1987, and his second tenure in office lasted until
1995. In July 1989, Myers, a mechanic with the town's Department
of Public Works, and Willie Deadmon, the Director of Public Works,
complained to Bobby Gene Brown, a town alderman, that Beaver had
misappropriated town property and labor for private purposes. These
three, along with three other Public Works Employees, met with the
County District Attorney concerning the allegations.

The DA asked the State Bureau of Investigation to look into the
matter; the SBI complied, assigning Agent J.W. Bryant to the case.
Bryant began his investigation by interviewing Beaver's accusers.

2

On August 3, 1989, as Bryant was concluding his initial interviews of Deadmon and Myers at the Public Works building, Beaver arrived. When he saw Bryant, Beaver became angry, and he instructed the agent not to speak with town employees during working hours. After Bryant left, Beaver asked Deadmon and Myers to disclose the substance of the interviews, but, pursuant to the agent's instructions, both remained mum.

A few weeks later, Deadmon was notified that his termination had been proposed, ostensibly because of complaints from several citizens that he had been discourteous to them. On September 5, 1989, at its regular monthly meeting, the town's Board of Aldermen discussed whether it should dismiss Deadmon.

At the outset of the meeting, Myers was permitted to read aloud a lengthy, rambling statement that had been signed by twelve then-current and former town employees. In essence, the statement voiced the signatories' views that (1) Deadmon had been"railroaded on a bunch of dreamed up charges," as the result of his cooperation with the SBI; (2) town employees had once been unlawfully banned from an open Board meeting; (3) Beaver had cursed employees and private citizens alike; (4) Beaver had made, and would make, hiring and other employment decisions for the town based on his perception of the particular employee's or prospective employee's political allegiance; (5) Beaver and two other aldermen had conducted a secret, illegal Board meeting; and (6) legal proceedings against the town could be instituted as the result of Beaver's perceived transgressions. The statement also referred vaguely to employee "benefits" that Beaver had caused to be cut, observing that the town had suffered from the resulting attrition in personnel.

Later that evening, the Board convened an executive session, during which Deadmon's future as a town employee was discussed. The aldermen split 2-2 on whether to terminate Deadmon's employment, with Brown voting in the negative. Beaver broke the tie, voting to dismiss Deadmon.

The SBI submitted a final report of its investigation on October 16, 1989. The supervising agent noted that the DA, upon reviewing the

3

case report, had advised the Bureau that he "did not see any prosecutable offense(s)."

About a year later, the town hired another mechanic, and Myers was reassigned to general labor tasks. In the fall of 1991, the Board voted to reclassify the town's employees according to the duties they performed. Myers was reclassified as a "waste collector," and his pay was cut from $12.68 to $7.03 per hour. In June 1993, Myers was assigned to the mowing crew, on which he spent approximately one-third of his time.

On March 7, 1994, the Board voted to hire a private company to do the town's mowing; it then decided to terminate Myers, effective March 31, 1994. Beaver presided over and participated in both the 1991 and 1994 meetings, during which the Board discussed and voted on Myers's reclassification and, ultimately, his dismissal. On neither occasion, however, was the Board deadlocked, which would have required Beaver to cast his vote to break the tie.

Myers filed this action in state court on November 3, 1994, pursuant to 42 U.S.C. § 1983. The complaint named the town and Beaver as defendants, and it purported to sue Beaver in both his official and individual capacities. Myers alleged that the defendants had taken the several adverse employment actions against him because he had spoken ill of Beaver to Bryant and had spoken against Beaver at the Board meeting. According to Myers, the defendants' actions had impermissibly abridged his freedom of speech as secured to him by the First Amendment. Myers contended further that the defendants had infringed on his right to free speech under the state constitution, had denied to him his federal and state due process rights, and had wrongfully discharged him in contravention of a state "whistle-blower" statute.

The defendants removed the case to the district court on November 30, 1994, and they moved for summary judgment as to all claims. On March 22, 1996, the district court issued a memorandum opinion and order granting summary judgment to both defendants on Myers's substantive due process claims.[1] The court also granted summary judg-

_____

[1] Myers had previously stipulated to having some of his other claims dismissed with prejudice, including those alleging the violation of his procedural due process rights.

4

ment to Beaver as to the state free-speech and wrongful discharge claims against him in his individual capacity.

The district court, however, denied Beaver's motion for summary judgment as to the First Amendment claim against him in his individual capacity, ruling that he was not entitled to qualified immunity for his alleged actions. The court likewise denied summary judgment to the town on the First Amendment claim, as well as the state free-speech and wrongful discharge claims.[2] Beaver and the town timely filed a joint appeal.

II.

A.

The district court ruled that all of the prerequisites had been met to allow a trial of Myers's First Amendment claim against Beaver in his individual capacity. The court held, as a matter of law, (1) that Myers's "speech," both to Bryant and before the Board, addressed, at its core, matters of public concern, see Pickering v. Board of Educ., 391 U.S. 563, 574 (1968); and (2) that the town's interest in "the effective and efficient fulfillment of its responsibilities to the public," Connick v. Myers, 461 U.S. 138, 150 (1983), was at its ebb in this case, inasmuch as Myers's and Beaver's respective positions within the government engendered no need for them to cultivate a close working relationship, and any significant impairment of employee morale or of any governmental function was not to be reasonably apprehended as the result of Myers's speech.

The foregoing circumstances, according to the district court, compelled it to conclude that Myers's constitutional right to speak out was a clearly established one, of which Beaver should have known. Thus, the court reasoned, Beaver could not avail himself of the defense of

_____

**2** In addition, the district court denied summary judgment to Beaver on the three surviving claims insofar as they alleged him to be liable in his official capacity. The court correctly recognized these claims to be duplicative of those against the town. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

5

qualified immunity. <u>See Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).**3**

Our review of the record reveals no error in the district court's analysis. We therefore affirm that court's decision to allow Myers to proceed to trial on his First Amendment claim against Beaver individually, for the reasons stated in its memorandum opinion. <u>Myers v. Town of Landis, et al.</u>, No. CA-94-700-4 (M.D.N.C., Mar. 22, 1996).

B.

We are constrained, however, to remark further on one aspect of the district court's qualified immunity analysis upon which it chose

_____

**3** **<u>See also</u> <u>Cromer v. Brown</u>**, 88 F.3d 1315, 1325 (4th Cir. 1996) (recognizing that, under <u>Pickering</u> and <u>Connick</u>, analyzing whether the right to engage in particular speech is clearly established, giving rise to a constitutionally protected interest, is, at the threshold, a two-step process); <u>DiMeglio v. Haynes</u>, 45 F.3d 790, 794-95 n.1 (4th Cir. 1995) (upon determining that the plaintiff has alleged that a clearly established right has been violated, a court must then decide whether a reasonable public official would have known that his actions violated that right).

Myers, of course, is also charged with showing that Beaver actually caused any or all of the adverse employment actions to have been taken against him. In addition, Myers bears the initial burden of demonstrating that the exercise of his right to speak freely was a "motivating factor" in Beaver's decision to act against him. <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977). Finally, though causation be proved to the extent described above, Beaver cannot be held liable if Myers would have been transferred, demoted, or dismissed even in the absence of the protected conduct. <u>Id.</u> The district court concluded that the evidence raised a triable dispute concerning the extent of Beaver's influence over Board decisions, his ongoing animus toward Myers, and the possibility that the adverse employment actions of which Myers complains would have been taken in any event. <u>See</u> Fed. R. Civ. P. 56(c) (summary judgment appropriate only where the pleadings, depositions, affidavits, and other materials on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). Beaver does not challenge the lower court's findings on this interlocutory appeal. <u>See Johnson v. Jones</u>, 115 S. Ct. 2151, 2156 (1995).

not to expound; though the point was largely ignored below, Beaver has made it the cornerstone of his appeal. Beaver's argument relates to the threshold Pickering determination, which the Supreme Court has said implicates "the right of a public employee as a citizen, [to] comment[ ] upon a matter of public concern." Connick, 461 U.S. at 143. We have recently isolated the "as a citizen" portion of the above language to urge district courts in this circuit to evaluate not only the content of the speech at issue to determine whether it addresses a matter of public concern, but also to consider the context in which the speech is communicated. DiMeglio, supra note 3, at 805.

In DiMeglio, we opined that remarks made by a zoning inspector at a citizens' meeting may not have been constitutionally protected, because the inspector admitted that he attended the meeting as the official representative of the county zoning office"in the good-faith performance of his public duties." Id. We noted some uncertainty in the law as to whether a public employee's statement,"spoken within his public role and concerning a matter within the scope of his responsibilities, [are] protected expressions upon which a retaliation claim [can] be based." Id. We observed that this uncertainty could, in an appropriate case, preclude the possibility that a public employee -- speaking merely as an employee -- possessed a clearly established right to speak in a fashion inimical to his employer. Id.

DiMeglio simply has no application here. A town mechanic, unlike a county zoning inspector, need not interact meaningfully with the citizenry in order to adequately perform his public duties. Whereas a zoning inspector is often required to exit the more familiar confines of his office and conduct on-site examinations, attend citizens' meetings, or otherwise actively associate with the public at large, the occupation of mechanic entails no similar responsibilities; his "public role," to the extent that it may exist, is exceedingly limited.

It is plain that Myers spoke to the SBI as a concerned citizen, and not because his job required him to do so. His remarks before the Board, though echoing the sentiments of others, were also made in his role as citizen. Both instances of speech addressed matters of public concern, and, absent a sufficiently important governmental interest in denying him a voice, Myers was entitled to the protection of the First Amendment.

7

C.

Beaver takes the rather bizarre position that, inasmuch as he may have been entitled to legislative immunity for his role in Board discussions preceding votes that ultimately resulted in adverse employment actions being taken against Myers, see Section I, supra, his reasonable belief that he was immune as a legislator somehow confers on him qualified immunity for his personal acts. This argument was not raised below, and, in any event, it wholly ignores that Myers has alleged (and has produced some evidence) that Beaver held considerable sway over the Board, effectively making its actions his own. See note 3, supra.

III.

The town urges that we exercise our pendent appellate jurisdiction to reverse the district court's denial of summary judgment as to the remaining claims against it, insisting that those claims are "inextricably intertwined" with the district court's decision to deny Beaver qualified immunity. See Swint v. Chambers County Comm'n, 115 S. Ct. 1203, 1212 (1995); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996).

We disagree. We would not consider supplemental state law claims brought against the lone defendant in Taylor, and we are especially reluctant to extend our jurisdiction over interlocutory appeals of denials of qualified immunity to Section 1983 co-defendants who may not even avail themselves of the defense. We therefore dismiss this appeal to the extent that it has been taken by the town.

IV.

The district court's order denying summary judgment to Beaver is affirmed. The town's appeal is dismissed, and the case is remanded to the district court for further proceedings.

AFFIRMED IN PART, DISMISSED IN PART, AND REMANDED