**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WALTER CLINE; WILLIAM HAGLER,
Plaintiffs-Appellants,

v.

ARTHUR BINDER, in his official
capacity and individually as Deputy
Sheriff of Cumberland County,
North Carolina; MORRIS BEDSOLE, in

his official capacity as former
sheriff of Cumberland County and
individually; JIMMY HENLEY; JOHN
DOE, in their official capacities and
individually; CUMBERLAND COUNTY,
NORTH CAROLINA, and the Office of
the Sheriff of Cumberland County,
Defendants-Appellees.

No. 98-2433

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-96-811-5-BO)

Argued: June 10, 1999

Decided: July 19, 1999

Before LUTTIG and KING, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

_____

Affirmed in part and remanded in part by unpublished per curiam
opinion.

_____

**COUNSEL**

**ARGUED:** Robert A. Dybing, SHUFORD, RUBIN & GIBNEY, Richmond, Virginia, for Appellants. Douglas Edward Canders, OFFICE OF THE COUNTY ATTORNEY, Fayetteville, North Carolina; Bobby Grey Deaver, West Jefferson, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Walter Cline and William Hagler were arrested in Cumberland County, North Carolina, for extortion, conspiracy to commit extortion, violations of the Bail Bondsmen and Runners Act, N.C. Gen. Stat. § 58-71-1 et seq., and for carrying concealed weapons. After the district attorney dismissed all the charges, Cline and Hagler filed suit pursuant to 42 U.S.C. § 1983 against Arthur Binder, both individually and in his official capacity as Deputy Sheriff of Cumberland County, and others,[1] alleging violations of their Fourth and Fourteenth Amendment rights under the Constitution of the United States, as well as various state law claims.[2] Concluding that the defendants were entitled to qualified immunity on the § 1983 claims, the district court granted summary judgment in favor of the defendants and dismissed the plaintiffs' claims in their entirety.

_____

[1] The complaint also named as defendants Morris Bedsole, in his official capacity as former Sheriff of Cumberland County and individually; Jimmy Henley and John Doe, each in his official capacity and individually (collectively "Binder"); and Cumberland County, North Carolina and the Office of the Sheriff of Cumberland County.

[2] The state law claims included gross negligence, malicious prosecution, tortious interference with business relations, assault and battery, and claims under the North Carolina Constitution.

2

Cline and Hagler appeal from the final judgment of the district court, entered on May 5, 1998. As explained below, we affirm the grant of summary judgment on all federal claims. As for the state claims, we remand these to the district court so that it may determine whether to exercise pendent jurisdiction over them.

I.

In April 1993, Cline, a bail bondsman, posted a $10,000 secured bond for the appearance of Marcus Acosta in a criminal case in Cumberland County, North Carolina. Acosta failed to appear in court as required. As a result, Acosta's bond was ordered forfeited and an order for his arrest was issued.

Cline hired Hagler, a private investigator, to help him find Acosta. After discovering that Acosta was in Puerto Rico, Cline and Hagler flew to Puerto Rico in September 1993, where they arrested Acosta and brought him back to Cumberland County.[3]

Rather than returning Acosta to the County authorities as required, they kept him in their custody. Cline, Hagler, and Acosta, who was shackled and handcuffed, appeared at the home of Ernesto Sanchez at approximately 1:00 a.m. on September 23, 1993. According to Sanchez -- who was purportedly involved in drug dealings with Acosta -- Hagler told him that if Sanchez did not give them $10,000, they would turn over to the police certain tape recordings they claim they had made of telephone conversations between Sanchez and Acosta while Acosta was in Puerto Rico -- evidence that Sanchez knew of Acosta's whereabouts while he was a fugitive from justice. Sanchez also said that Cline and Hagler told him that they would release Acosta and permit him to return to Puerto Rico when Sanchez gave them $10,000. Sanchez gave Hagler $900, and told them he would give them the balance the next day.

In the morning of September 23, Sanchez contacted his attorney and reported that he believed he was being extorted. [4] His attorney

---

[3] Cline possessed the authority to arrest Acosta for the purpose of surrendering him to the court. See N.C. Gen. Stat. § 58-71-30 (1993).
[4] The crime of extortion in North Carolina is defined as follows:

Any person who threatens or communicates a threat or threats to

3

then took Sanchez to the District Attorney and the Cumberland County's Sheriff's Department ("CCSD"), which began an investigation. Because Sanchez resided in Harnett County, the CCSD sought assistance from the North Carolina State Bureau of Investigation ("SBI") and the Harnett County Sheriff's Department ("HCSD"). After Sanchez was interviewed, he was given a tape recorder by the officers and instructed to record any telephone calls he received from Acosta, Cline, or Hagler.

Sanchez did as requested, and altogether recorded six telephone conversations, between himself and Acosta or Hagler, which confirmed Sanchez's story regarding the extortion scheme.[5] At the direction of the investigating officers, a meeting was set up between Sanchez and Hagler at the Ambassador Motel in Fayetteville, North Carolina, on September 24, 1993. The SBI supplied Sanchez with $5000 to be used to consummate the arrangement. Sanchez, cooperating with the officers, wore a microphone, and the investigating officers waited in an adjacent motel room. Sanchez paged Hagler after Sanchez arrived at his room. Hagler called Sanchez back and they arranged to meet at the motel, where Hagler would turn over the tapes and Acosta in exchange for $10,000 in cash.

At about 6:15 p.m. that evening, Hagler showed up at the motel room with Bill Newton, a bailbondsman runner for Walter Cline, but without Acosta or the tapes. Sanchez demanded that Hagler produce Acosta. Hagler left, but Bill Newton stayed behind with Sanchez. At approximately 6:45 p.m., Hagler returned with three tapes (of music, not of previously taped conversations between Sanchez and Acosta) he had obtained from Cline at his office, and Cline showed up with Acosta a few moments later. Hagler and Cline took Acosta, in leg shackles, into the motel room. Sanchez gave Hagler the $5000 sup-

_____

another with the intention thereby wrongfully to obtain anything of value or any acquittance, advantage, or immunity is guilty of extortion and such person shall be punished as a Class F felon.

N.C. Gen. Stat. § 14-118.4 (1993).

[5] The transcripts of the recorded conversations were made exhibits to Sanchez's deposition by Cline's counsel.

4

plied to him by the SBI, and told him that the rest was in his car. As Sanchez and Hagler exited the motel room to go to Sanchez's car -- a prearranged signal with the police that the deal had been made -- the officers entered the room and arrested Cline, Acosta, and Newton.**6** Hagler and Robert Helms, Cline's son-in-law who was waiting outside in a car, were also arrested. Warrants were issued by a magistrate judge following the arrests. The district attorney, exercising his prosecutorial discretion, subsequently dismissed all the charges against Cline and Hagler.

II.

We review a district court's grant of summary judgment de novo. Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1994). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

The gravamen of Cline and Hagler's complaint is that Binder -- the principal investigator -- and the other defendants lacked probable cause to arrest them, thereby violating their rights under the Fourth Amendment. The district court concluded that probable cause existed and thus Cline and Hagler's federal constitutional rights had not been violated. Accordingly, the district court held that the defendants were entitled to qualified immunity, and granted their motion for summary judgment.

Qualified immunity under § 1983 shields government officials performing discretionary functions from civil liability to the extent that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A court assessing a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 119 S.

_____

**6** Certain content contained in the taped conversations between Sanchez and Acosta led the police officers and investigators to believe that Acosta was a willing participant in the extortion, rather than a victim.

5

Ct. 1692, 1697 (1999) (quoting Conn v. Gabbert , 119 S. Ct. 1292, 1295 (1999)). If the violation of a constitutional right is properly alleged, a court must then decide whether this right was clearly established at the time of the alleged violation -- here, the arrest. The Supreme Court has instructed that the constitutional question should be addressed before the qualified immunity question. Id. We thus first consider the Fourth Amendment question.

Probable cause to justify an arrest arises when"facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998) (quoting Michigan v. DeFillippo , 443 U.S. 31, 37 (1979)). In assessing the existence of probable cause, "courts examine the totality of the circumstances known to the officer at the time of the arrest." Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996) (citation omitted). "Probable cause must be supported by more than a mere suspicion, but evidence sufficient to convict is not required." Id.

Cline and Hagler contend that the officers lacked probable cause to arrest them, because the officers should never have credited the information provided by Sanchez -- a convicted felon facing charges for falsely incriminating another. They argue unpersuasively that they were only trying to help Acosta get $10,000 to again bond himself out of custody. Even assuming arguendo that this far-fetched theory were true, the probable cause inquiry depends not on the possible motivations of Cline and Hagler, but rather on the reasonableness of the officers' beliefs -- in light of the facts within their knowledge at the time of the arrests -- that the suspects had committed, or were about to commit a crime. See Porterfield, 156 F.3d at 569.

The appellants ignore the compelling fact that the police possessed tapes of incriminating telephone conversations that fully supported Sanchez's account that he was being extorted.**7** In one of the taped

_____

**7** Despite appellants' argument to the contrary, the fact that Cline was not recorded on the tapes does not vitiate the existence of probable cause to arrest him. The totality of circumstances known to Binder and the other defendants at the time of Cline's arrest was certainly sufficient to

6

phone calls with Hagler, Sanchez asked him if the $900 that Hagler "took from [him]" was to be included in the $10,000 he was supposed to give them to secure the tapes and Acosta's release. Hagler responded that it wasn't -- the $900 was for expenses incurred for the trip to Puerto Rico to capture Acosta. The taped conversations also indicate that Sanchez would give the $10,000 to Hagler and Cline -- and not to Acosta. In addition, Hagler told Sanchez that the information on the alleged tapes of conversations between Sanchez and Acosta -- made while Acosta was in hiding in Puerto Rico -- would "hurt [him] a great deal."

All of these facts were fully known to Binder at the time of Cline and Hagler's arrest. Cline and Hagler have failed to raise a genuine issue of material fact regarding the officer's conduct that would preclude summary judgment. See Bonner v. Anderson, 81 F.3d 472, 476 (4th Cir. 1996) (citation omitted).

The district court properly concluded that there was probable cause to arrest Cline and Hagler and that they thus failed to establish a constitutional violation -- a necessary predicate for § 1983 liability. Accordingly, Binder and the other defendants were entitled to qualified immunity in their individual capacities against Cline and Hagler's § 1983 claims.

III.

As for Cline and Hagler's official-capacity claims, such claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Monell v. New York City Dep't of Social Servs., 416 U.S. 232, 237-38 (1974)). A governmental entity is liable under § 1983, however, only when the entity's "policy or

_____

establish probable cause as to his arrest. See Taylor, 81 F.3d at 434. Not only had Cline hired Hagler for the purpose of finding Acosta, but Cline went with Hagler and Acosta to Sanchez's house to demand $10,000, and was present when Hagler received $900 from Sanchez. And Cline, of course, showed up at the motel with the shackled and handcuffed Acosta for the deal and was arrested while counting the money Sanchez had given them.

7

custom" played a part in the deprivation of a federal right. <u>Graham</u>, 473 U.S. at 166. Of course, before a governmental entity -- here the Cumberland County Sheriff's Department -- can be found liable under § 1983, there must be a deprivation of a federal right. <u>See id.</u>; <u>Hinkle v. City of Clarksburg</u>, 81 F.3d 416, 420 (4th Cir. 1996). Because the officers had probable cause to arrest the plaintiffs, Cline and Hagler's constitutional rights were not violated, and thus their official-capacity claims must also fail.**8**

IV.

In their Complaint, Cline and Hagler also asserted a number of state law claims. The district court failed to address the state law claims and dismissed all the claims "in their entirety" without specifying whether the dismissal was to be with prejudice or without prejudice. Because it would have been error to dismiss the state law claims with prejudice without having first exercised pendent jurisdiction and considered their merits, we believe that the district court intended to decline to exercise pendent jurisdiction over the state claims and to dismiss them without prejudice. <u>See United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726-27 (1966) (dismissal without prejudice of state claims is proper when district court declines to exercise pendent jurisdiction); <u>Edelstein v. Wilentz</u>, 812 F.2d 128, 134 (3d Cir. 1987) (noting that dismissal of state claims for lack of jurisdiction must be without prejudice). We remand the state law claims to the district court, however, for clarification of their disposition.

For the reasons stated above, we affirm the district court's grant of summary judgment to the defendants on all federal claims and remand for consideration and appropriate disposition of the state law claims.**9**

<u>AFFIRMED IN PART AND REMANDED IN PART</u>

_____

**8** Municipal liability is not an issue in this appeal.

**9** The appellees have requested this court to rule on a motion to strike certain expert testimony offered by the appellants, which the district court apparently did not consider below. Because we affirm the grant of summary judgment in favor of the appellees, this issue is moot.

8