COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, Huff and Senior Judge Coleman
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
v.        Record No. 1742-11-3                    JUDGE ROSSIE D. ALSTON, JR.
                                                  FEBRUARY 7, 2012
ROBERT ALLEN HICKS


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

Craig W. Stallard, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellant.

Keith Orgera, Senior Assistant Public Defender (Office of the
Public Defender, on brief), for appellee.


The Commonwealth appeals the trial court's pretrial order granting a motion to suppress

a statement made by Robert Allen Hicks on April 12, 2011.  On appeal, the Commonwealth

argues that the trial court erred in granting the motion to suppress because there was probable

cause to arrest Hicks.  For the reasons that follow, we find that the trial court erred in granting

the motion to suppress and remand the case for a trial on the merits if the Commonwealth is so

inclined.

I.  Background[1]

When we review a trial court's denial of a motion to suppress, "[w]e view the evidence in

a light most favorable to . . . the prevailing party below, and we grant all reasonable inferences

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As the parties are fully conversant with the record in this case and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of the disposition of this
appeal.

fairly deducible from that evidence." Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "On appeal, we consider the entire record in determining whether the trial court properly [ruled on an] appellant's motion to suppress." Patterson v. Commonwealth, 17 Va. App. 644, 648, 440 S.E.2d 412, 415 (1994) (citing DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 543 (1987)).

So viewed, the evidence indicated that during the daytime on April 12, 2011, an employee with the Dollar General Store on Memorial Avenue in Lynchburg observed an individual whom he believed was shoplifting. The employee called 911 and reported the incident. The employee described the shoplifter to the 911 operator as a white male, 25 to 35 years old, and told the operator that the shoplifter had fled across the street from the store. A library is located across the street from the Dollar General Store. Additionally, the employee provided a description of what the man was wearing.[2]

Officer Dooley of the Lynchburg Police Department was in his patrol car on Lakeside Drive heading toward Memorial Avenue when he received a call over his radio regarding the shoplifting incident. The call described the suspect as a white male wearing a gray hooded sweatshirt. As Dooley approached Memorial Avenue, he observed an individual matching the radioed description in the general area of the library. Dooley recognized the individual as the same person he and another officer, Officer Ferron, had encountered the night before. Because Dooley was transporting a prisoner, he was unable to stop. However, Dooley radioed Ferron and advised him that the suspect, whom he described as a white male wearing a gray hooded sweatshirt, was traveling in the direction of the library. Dooley told Ferron that the suspect was the same individual they had encountered the night before. Although Dooley did not recall the individual's name, Ferron remembered that it was Robert Hicks.

_____
[2] The employee could not remember the description he provided to the 911 operator during a later hearing on Hicks' motion to suppress.

Ferron went to the library across the street from the Dollar General Store after receiving Dooley's call. In addition to the information Dooley had conveyed, dispatch informed Ferron that the store employee last saw the suspect in the area of the library.

While Ferron was on his way to the library, it began to rain. Upon entering the library, Ferron saw a white male wearing a gray, or a dark blue and gray, hooded sweatshirt. Ferron observed "fresh raindrops" on the man's hooded sweatshirt. Additionally, because of his previous encounter with Hicks the night before, Ferron recognized the individual as Robert Hicks. Hicks was sitting at a computer with an opened bag of trail mix. Ferron did not observe Hicks engaging in any "suspicious activity." Ferron approached Hicks and called him by his first name, "Robert." In response, Hicks denied that his name was Robert. Without undertaking any further investigation, Ferron then told Hicks that he was a suspect in a larceny at the Dollar General Store and that although he was not under arrest he needed to come with Ferron because he was being "detained." Hicks refused to go with Ferron or to speak further with him. Ferron asked Hicks several more times to leave with him, but Hicks refused. Ferron then physically subdued Hicks, handcuffed him, and walked him out of the library without his consent.

Ferron next ushered Hicks to a patrol car in order to transport him to the Dollar General Store for identification. While in the patrol car, and without Ferron questioning him, Hicks admitted that he had taken trail mix from the Dollar General Store.

Before trial, Hicks moved to suppress his April 12, 2011 admission on the ground that he was arrested without probable cause in violation of the Fourth Amendment. After a hearing on the motion to suppress, the trial court found that the encounter between Hicks and Ferron was initially an investigative detention that became an arrest once Hicks was placed in handcuffs. In making its finding regarding probable cause, the trial court stated:

> [t]he only information before the Court for purposes of the motion
> to suppress that relates to probable cause is the fact that [Hicks

was] wearing a gray hoodie and is a white male[,] and those are the only two facts . . . which the Court . . . can consider in the determination of probable cause.

The trial court then concluded that the police lacked probable cause to arrest Hicks. As a result, the trial court granted Hicks' motion to suppress the statement he made to Ferron. This appeal followed.

## II. Analysis

On appeal, the Commonwealth contends that there was probable cause to arrest Hicks. We will not reverse the trial court's determination that Ferron lacked probable cause to arrest Hicks unless the decision was plainly wrong. Grimstead, 12 Va. App. at 1067, 407 S.E.2d at 48 (citing Code § 8.01-680). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). However, we review *de novo* the trial court's application of defined legal standards such as probable cause to the particular facts of the case. Ornelas v. United States, 517 U.S. 690, 699 (1996).

"The [F]ourth [A]mendment permits an officer who has probable cause to make a warrantless arrest." Penn v. Commonwealth, 13 Va. App. 399, 407, 412 S.E.2d 189, 194 (1991), aff'd, 244 Va. 218, 420 S.E.2d 713 (1992). "'[T]he test of constitutional validity is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been committed'" and that the person being detained or arrested probably committed it. Id. at 407-08, 412 S.E.2d at 194 (quoting DePriest, 4 Va. App. at 584, 359 S.E.2d at 543) (internal quotations omitted).

"[T]he 'very phrase "probable cause" confirms that the Fourth Amendment does not demand all possible precision.'" Joyce v. Commonwealth, 56 Va. App. 646, 658, 696 S.E.2d

- 4 -

237, 243 (2010) (quoting Herring v. United States, 555 U.S. 135, 139 (2009)). Probable cause is based on probabilities rather than hard certainties. Powell v. Commonwealth, 57 Va. App. 329, 335, 701 S.E.2d 831, 833 (2010). "Courts employ a 'common sense approach' not a 'hypertechnical, rigid, and legalistic analysis' when reviewing probable cause determinations." Id. (quoting Derr v. Commonwealth, 242 Va. 413, 421, 410 S.E.2d 662, 666 (1991)). Probable cause does not require an actual showing of criminal activity. Id. Rather, it "'requires *only* a probability or substantial chance of criminal activity.'" Id. at 336, 701 S.E.2d at 834 (quoting Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983)).

> In other words, even though probable cause means more than a "mere suspicion," it is not necessary for the facts to be "sufficient to convict" the accused of the offense. Gomez [v. Atkins], 296 F.3d [253,] 262 [(4th Cir. 2002)] (quoting Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996)). Unlike a factfinder at trial, "reasonable law officers need not 'resolve every doubt about a suspect's guilt before probable cause is established.'" Id. (quoting Torchinsky v. Siwinski, 942 F.2d 257, [264] (4th Cir. 1991)).

Slayton v. Commonwealth, 41 Va. App. 101, 107, 582 S.E.2d 448, 451 (2003).

In order to determine whether probable cause exists, we focus on "what *the totality of the circumstances* meant to police officers trained in analyzing the observed conduct for purposes of crime control." Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976) (emphasis added).

We find the facts of Broady v. Commonwealth, 16 Va. App. 281, 429 S.E.2d 468 (1993), instructive in the instant case. In Broady, a husband and wife were robbed in their hotel room. 16 Va. App. at 283, 429 S.E.2d at 470. The couple struggled with the two robbers, and the robbers eventually fled with the wife's purse. Id. The couple contacted the police and described both robbers. The couple described the first robber as a "'fairly tall and skinny' black male with a short mustache and wearing a maroon or burgundy jacket" and jeans and the second robber as a "shorter black male with a 'rat's tail' in his hair and wearing a gray or tan leather jacket" and

jeans. Id. at 283-84, 429 S.E.2d at 470. Additionally, the couple "pointed in the direction in which the two men had fled." Id. at 284, 429 S.E.2d at 470. Shortly after receiving the call regarding the robbery, the police encountered Broady and another man walking out of the woods behind the hotel. Id. Broady, along with the other man, fled back into the woods, and both men were apprehended 150 yards from the hotel fifteen to twenty minutes later. Id. Broady had a "rat's tail" hairstyle and was wearing a tan jacket, while the other man was wearing a burgundy jacket. Id. Police arrested both men. Id.

At trial, Broady challenged the arrest on the basis that the police lacked probable cause. The trial court denied the motion to suppress. This Court affirmed, finding probable cause was sufficiently established by "[t]he sighting of two individuals who matched the description given by the victims and their apprehension only 150 yards from the scene of the crime fifteen to twenty minutes after the description was given." Id. at 287, 429 S.E.2d at 472.

Similarly, in the instant case, under the totality of the circumstances, there was probable cause to arrest Hicks. Like Broady, Hicks matched the description given by an eyewitness and was apprehended near the scene of the crime. Moreover, not only did Hicks match the description given by the Dollar General Store employee, but Dooley also observed Hicks near the library, moving in the direction the employee told the 911 operator the suspect had fled. Dooley communicated this observation to Ferron.

Thus, when Ferron found Hicks in the library, he knew that a shoplifting had occurred at the nearby Dollar General Store, located across the street, and that the suspect was a white male wearing a gray hooded sweatshirt, who fled toward the library. Additionally, from his conversation with Dooley, Ferron knew that Hicks, who matched the suspect's description, was seen in the area of the library and the Dollar General Store shortly after the shoplifting occurred. Finally, when Ferron approached Hicks in the library and called to him by name, Hicks denied

- 6 -

that his name was Robert. Ferron knew Hicks was being untruthful about his identity because he had learned Hicks' name the night before when Ferron previously encountered him. Under the totality of the circumstances, these facts "are sufficient to warrant a person of reasonable caution to believe that an offense [had] been . . . committed" and that Hicks probably committed it. See Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981) (citing Draper v. United States, 358 U.S. 307, 313 (1959)).

On appeal, Hicks relies upon the trial court's statement that

> [t]he only information before the Court for purposes of the motion to suppress that relates to probable cause is the fact that [Hicks was] wearing a gray hoodie and is a white male[,] and those are the only two facts . . . which the Court . . . can consider in the determination of probable cause.

Hicks argues that, in making this statement, the trial court implicitly held that the other facts that the officers testified to were not credible. These other facts include Dooley's sighting of Hicks moving in the direction that the Dollar General Store employee described as the direction in which the suspect had fled and Dooley's communication of this fact to Ferron, along with the proximity of the library to the Dollar General Store, the raindrops on Hicks' sweatshirt, and Hicks' denial that his name was Robert. Although "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder," Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995), there is nothing in this record to suggest that the trial court was making credibility determinations when it failed to reference other evidence of probable cause beyond Hicks' clothing and race.[3] The trial court gave no explanation for its

---

[3] Hicks argues that Ferron's testimony about the raindrops on Hicks' sweatshirt was not credible because Ferron admitted on cross-examination that he had not testified about the raindrops at the preliminary hearing. Ferron explained that the information about the raindrops "just didn't come out" at the preliminary hearing. There is no statement or suggestion in the record that the trial court was actually making a credibility determination when it disregarded this fact in determining probable cause. Instead, the trial court simply ignored this and other facts without explanation.

failure to consider the other facts mentioned above and never stated that it found these facts incredible.

As stated above, our jurisprudence obliges the trial court to consider the totality of the circumstances in determining the existence of probable cause to effectuate an arrest. Hollis, 216 Va. at 877, 223 S.E.2d at 889. Moreover, because we are permitted to review the entire record in our analysis of the propriety of the granting of a motion to suppress, Patterson, 17 Va. App. at 648, 440 S.E.2d at 415, we find that, upon review of the totality of the circumstances of the instant case, Ferron had probable cause to arrest Hicks.

Because we hold that there was probable cause to arrest Hicks, the trial court erred in granting Hicks' motion to suppress. We reverse the suppression order and remand for trial if the Commonwealth be so inclined.

Reversed and remanded.

---

Hicks also argues that Ferron's testimony about Hicks' denial that his name was Robert was not credible because this information was not elicited until re-direct examination. However, we note that the trial court in the instant case found that Ferron "may have been acting on the fact that he knew [Hicks] was not giving his name, or what he believed to be his name," but that this fact, without more, was insufficient to establish probable cause. Thus, the trial court apparently credited Ferron's testimony regarding Hicks' denial of his name.